UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
VIRGINIA BLANCO,

               Petitioner,

         -against-

UNITED STATES OF AMERICA,

               Respondent.
------------------------------------------------------

                     ORDER

                     No. 16-CR-408-3 (CS)
                     No. 18-CV-8216 (CS)

Seibel, J.

    Before the Court is Defendant Virginia Blanco's petition under 28 U.S.C. § 2255 and

supporting submissions, (ECF Nos. 194, 200, 202, 209-210, 212-213), and the Government's

responses thereto, (ECF Nos. 206, 214).[1]   She seeks vacatur of her convictions and sentences for

conspiracy to commit bank robbery, bank robbery, and discharge of a firearm during and in

furtherance of a crime of violence.   Familiarity with the trial, the Petition, prior proceedings in

the case, the general legal standards governing § 2255 petitions, and the special solicitude due to

*pro se* litigants is presumed.   Petitioner argues chiefly that her trial lawyer provided ineffective

---

    [1]All docket references are to No. 16-CR-408.

    After Petitioner requested to file additional exhibits in support of her Petition, (ECF No. 202), I stated that I would consider those exhibits but that "[t]here are time limits for petitions under 28 USC 2255, and a petitioner cannot evade them by repeatedly adding things to the petition after the one-year limitations period has run.   Further, accepting new exhibits or arguments from Petitioner as part of her reply would not be fair, as the Government would not have had the opportunity to address them," (ECF No. 203).   After the Government opposed the Petition, Petitioner filed four more submissions.   (ECF Nos. 209-210, 212-213), to the last of which the Government responded briefly, (ECF No. 214).   The first, which is in the nature of a reply to the opposition, is properly considered, as is arguably the last, which attempts to raise a legal issue.   The remainder are mostly redundant and in any event do not affect the outcome.

assistance of counsel, that Government witnesses perjured themselves, and that prejudicial evidence was admitted at her trial.

I.      Issues Cognizable Under § 2255

        A.      Timeliness and Relation Back

        A federal prisoner seeking relief under § 2255 generally must file the motion within one year from the latest of four benchmark dates:   (1) when the judgment of conviction becomes final; (2) when a government-created impediment to making such a motion is removed; (3) when the right asserted is initially recognized by the Supreme Court, if it has been made retroactively available to cases on collateral review; or (4) when the facts supporting the claim(s) could have been   discovered through the exercise of due diligence.   *See* 28 U.S.C. § 2255(f).   "Where a defendant does not seek Supreme Court review, a conviction becomes final when the time to seek such review expires, 90 days from the order affirming the conviction."   *Gonzalez v. United States*, 792 F.3d 232, 234 (2d Cir. 2015).[2]

        If a Petitioner seeks to amend or supplement a timely petition after the limitations period has run, Rule 15 of the Federal Rules of Civil Procedure applies.   Under that Rule, amendments are deemed to relate back to the original pleading if the claim asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading.   Fed. R. Civ. P. 15(c)(1).   In the *habeas* context, a later claim will relate back only if it and the original claim are "tied to a common core of operative facts."   *Mayle v. Felix*, 545 U.S. 644, 664 (2005).   That test is not met if the amendment is "supported by facts that

---

        [2] Unless otherwise noted, all case quotations omit internal citations, quotation marks, alterations and footnotes.

differ in both time and type from those the original pleading set forth." *Id.* at 650.   It does not

matter that the new claim arises out of the same trial or the same events, or is of the same general

type as the original claims.   *See Soler v. United States*, No. 05-CR-165, 2010 WL 5173858, at

*4 (S.D.N.Y. Dec. 20, 2010); *Reiter v. United States*, 371 F. Supp. 2d 417, 423 (S.D.N.Y. 2005),

*denying petition* 897 F.2d 639 (2d Cir. 1990).[3]   Untimely claims are barred where the original

complaint did not give fair notice of the new claim, *see Palmer v. Phillips*, No. 04-CV-1414,

2005 WL 1574655, at *2 (S.D.N.Y. July 6, 2005), and the new claim is "separate and distinct"

from the original claim, *Veal v. United States*, No. 97-CR-544, 2007 WL 3146925, at *6

(S.D.N.Y. Oct. 9, 2007), *aff'd*, 334 F. App'x 402 (2d Cir. 2009).   "Proposed amendments must

satisfy the *Mayle* standard even where both the original claims and the new claims are for

ineffective assistance of counsel."   *Ozsusamlar v. United States*, No. 02-CR-763, 2013 WL

4623648, at *4 (S.D.N.Y. Aug. 29, 2013), *denying petition* 278 F. App'x 75 (2d Cir. 2008); *see*

*Veal*, 2007 WL 3146925, at *6 (claim that attorney was ineffective in different way than

originally alleged did not relate back); *see Celaj v. United States*, 516 F. Supp. 3d 351, 362

(S.D.N.Y. 2021) (same) (collecting cases).

     B.     <u>Procedural Default/Mandate Rule</u>

"Because collateral challenges are in tension with society's strong interest in the finality

of criminal convictions, the courts have established rules that make it more difficult for a

defendant to upset a conviction by collateral, as opposed to direct, attack."   *Yick Man Mui v.*

*United States*, 614 F.3d 50, 53 (2010).   Where a claim could have been raised on direct appeal

---

[3] The Court will send Petitioner copies of all unpublished cases cited in this Order.

but was not, that claim is precluded from consideration under § 2255 unless the petitioner can show both cause for the failure to raise the claim and actual prejudice as a result. *United States v. Warren*, 335 F.3d 76, 79 (2d Cir. 2003). There is an exception to the requirement of cause and prejudice, however, for claims of ineffective assistance of counsel. *Fountain v. United States*, 357 F.3d 250, 254 (2d Cir. 2004). "[A] petitioner may bring an ineffective assistance of counsel claim whether or not the petitioner could have raised the claim on direct appeal." *Yick Man Mui*, 614 F.3d at 54.

But claims, including ineffective assistance claims, may be barred where they have been raised on direct appeal. "[T]he so-called mandate rule bars re-litigation of issues already decided on direct appeal," and "not only of matters expressly decided by the appellate court, but also . . . of issues impliedly resolved by the appellate court's mandate." *Id.* at 53. Thus,

> a defendant who raises on direct appeal ineffective assistance claims based on the strategies, actions, or inactions of counsel that can be, and are, adjudicated on the merits on the trial record, is precluded from raising new or repetitive claims based on the same strategies, actions, or inactions in a Section 2255 proceeding. However, such a defendant is not precluded from raising new ineffective assistance claims based on different strategies, actions, or inactions of counsel in a subsequent Section 2255 proceeding.

*Id.* at 51. Further,

> [t]he mandate rule is not confined to foreclosing re-litigation of underlying issues explicitly or implicitly decided on appeal. It also bars re-litigation of an ineffective assistance claim whose factual predicates were impliedly rejected by the appellate court mandate, even if the assistance claim asserted on habeas had not been expressed in those terms on direct appeal.

*Rodriguez v. United States*, No. 14-CV-4628, 2017 WL 6404900, at *11 (S.D.N.Y. Dec. 13, 2017), *aff'd*, 767 F. App'x 160 (2d Cir. 2019).

III.   Discussion

    A.   Issues Properly Considered

This Court entered judgment on May 31, 2019, (ECF No. 161), and the Second Circuit

affirmed that judgment on June 5, 2020, (ECF No. 183).   Petitioner asserts no government-

created impediment, newly retroactive Supreme Court decision or inability to discover facts,[4] so

her petition was due by September 7, 2021.[5]   Her Petition filed on June 7, 2021, (ECF No. 194),

was thus timely.   That Petition raised the following claims:

    1.       Trial counsel was ineffective because:

           a.       he was unprepared and lacked sufficient knowledge of the case;

           b.       his questions bolstered the testimony of cooperating witness Jeffrey Martinez;

           c.       he was unable to adequately discuss the case with Petitioner because he was unfamiliar with the discovery;

           d.       he lacked a strategy and failed to impeach witnesses whose testimony showed inconsistencies;

           e.       he failed to interview potential witnesses, including bank employees; and

           f.       his cross-examinations were flawed because he did not know anything beyond what the Government had asked.

    2.       Cooperating witness Giovanny Marte perjured himself in that:

           a.       he testified that Petitioner said not to bother seizing money from the teller drawers, when his 18 U.S.C. § 3500 material said that that was his idea;

           b.       he testified that he paid cash for a post-robbery trip to Aruba with Petitioner, when other evidence showed the trip had been booked on line;

---

[4] Nor does Petitioner argue that equitable tolling applies here.   *See generally Rivas v. Fischer*, 687 F.3d 514, 538 (2d Cir. 2012); *Valverde v. Stinson*, 224 F.3d 129, 133 (2d Cir. 2000).

[5] The conviction became final ninety days after June 5, which was September 4, 2021, but because that was the Saturday of Labor Day Weekend, Petitioner had until Tuesday, September 7, to file her petition.   (*See* ECF No. 197 at 3 & n.3.)

5

   c.     he did not accurately describe his criminal history; and

   d.     his testimony and proffers conflicted.

3.   She was prejudiced by:

   a.     Marte repeatedly testifying that other criminals were people with whom he
          and Petitioner had grown up; and

   b.     admission of testimony regarding her assisting Marte with drugs and guns
          before the bank robbery.

4.   The Government allowed Marte to cover up his extensive criminal history by
     lying about his prior arrests and convictions.

At the same time that she filed the Petition, Petitioner asked for an extension until

October 1, 2021 to supplement it.   (ECF No. 195.)   After hearing from the Government, (ECF

No. 197), the Court ruled as follows:

> As explained by the Government, [Petitioner] may [supplement her § 2255
> Petition] any time up to 9/7/21, which is when her one-year limitations period
> runs.   If she wants to supplement it on or before 10/1/21 but after 9/7/21, any
> issues raised in a post-9/7/21 supplement must relate back to the issues raised on
> or before 9/7/21.   Because relation-back is a complex issue (for example,
> additional claims of ineffective assistance may not relate back to earlier ones), I
> strongly recommend that Ms. Blanco say whatever she wants to say on or before
> 9/7/21.   That gives her plenty of time.

(ECF No. 198.)   Despite this warning, Petitioner did not file anything further until October 4,

2021.   (ECF No. 200.)

The following issues raised in the supplemental submission[6] relate back to the timely

claims:

---

[6]I have done my best to discern the issues Petitioner intended to raise in her
supplemental submission.

6

5.

    a.    Trial counsel's failure to interview or call witnesses;

    b.    Marte's alleged perjury about the teller drawers, Aruba and his criminal history; and

    c.    alleged prejudice from Marte's testimony regarding criminals with whom he and Petitioner had grown up.

The following issues arguably relate back, and giving Petitioner special solicitude, I will assume they do:

6.    Trial counsel was ineffective because:

    a.    he failed to call co-conspirator Andres Cruz to testify; and

    b.    he failed to utilize a recording made by a confidential informant of Martinez.

7.    Marte testified falsely in that:

    a.    Marte's and Martinez' statements on how the guns for the robbery were obtained did not match;

    b.    Martinez testified that he saw Marte with Petitioner's son around 2014 but Marte testified that he and Petitioner broke up around the end of 2013;

    c.    Marte testified that he sometimes took Petitioner's son to Head Start and picked him up, but five weeks' worth of records from the school do not list him as having done so;

    d.    Marte's testimony about when and where he counted the money was inconsistent with his § 3500 material; and

    e.    Marte's testimony with respect to how much money he gave Petitioner after the robbery was inconsistent with his § 3500 material.

But several of the issues she raised in the supplemental submission do not arise from "a common core of operative facts" as the original claims, *Mayle*, 545 U.S. at 664, and rely on "facts that differ in both time and type from those the original pleading set forth," *id.* at 650.

7

These include the claims that:

8.      Martinez falsely testified that he had never committed a crime with Marte but also testified about how Marte helped him by tripping a man Marte was chasing;

9.      Martinez testified falsely about his criminal history;

10.      Martinez did not initially identify Petitioner's photo; and

11.      trial counsel was ineffective for failing to argue that when Petitioner (according to Marte) suggested that the robbery be postponed because the bank was busy that day, she was withdrawing from the conspiracy.

Several of the issues Petitioner asks me to review were the subject of a motion under Federal Rules of Criminal Procedure 29 and 33 brought by new counsel before Petitioner was sentenced, (ECF Nos. 148, 152), which I denied, (ECF No. 164 at 2-37), and the ruling on which I incorporate here to the extent relevant. Those included the claims that trial counsel was unprepared, was unfamiliar with the facts, did not review all the discovery with her, lacked a strategy, failed to interview or call certain witnesses,[7] and did poor cross-examinations. Petitioner then unsuccessfully raised some of these issues on direct appeal. Specifically, the Second Circuit found, among other things, that: 1) while trial counsel likely should have interviewed the witnesses Petitioner specified, there was no ineffective assistance of counsel because those witnesses would have only served as character witnesses or impeached Government witnesses on collateral matters, and thus would not have affected the outcome;[8] 2)

---

[7] The individuals Petitioner mentioned in her Rule 33 motion as witnesses trial counsel should have interviewed or called were Andres Cruz and Antonio Parra. (ECF No. 148.) In her reply she added Felix Pena, Carlos Raposo, Ellianne Gallardo, Indhira Maldonado f/k/a Indhira Urena, Saad Khalil and Georgette Rabadi. (ECF No. 152.)

[8] The witnesses Petitioner mentioned in her brief on direct appeal were Parra, Raposo, Pena, Gaillardo, Bryant Martinez and Kristen Quirindongo.

trial counsel's cross-examinations of Marte and Martinez were not ineffective because the issues Petitioner said counsel should have addressed were not really contradictions, and the questioning might have corroborated other aspects of the Government's case; and 3) the Court did not err in admitting the drug and gun evidence.   (ECF No. 183.)

Thus, the following claims are not cognizable because they were raised on the Rule 33 motion and already rejected by the Second Circuit on appeal, and are thus barred by the mandate rule:   1a; 1b; 1c; 1d; 1e/5a to the extent they relate to Parra, Raposo, Pena, Gallado, Bryant Martinez and Quirindongo; 1f, 3b and 6b.

The following claims are not cognizable because they could have been raised on direct appeal and are thus procedurally defaulted:   1e/5a/6a as to Cruz, Parra, Pena, Raposo, Gallardo, Maldonado/Urena, Khalil and Rabadi; and 3a/5c and 7b, which arise from the trial record.[9]

The following claims are not cognizable because they were not raised until after the limitations period had run and they do not relate back to the original Petition:   8, 9, 10 and 11.

That leaves the following claims:   2a/5b, 2b/5b, 2c/4/5b, 2d, 7a, 7c, 7d and 7e.

B.      Merits

Petitioner argues that Marte's testimony was false and perjurious.   "A Section 2255 motion is not a vehicle for rearguing the credibility of witnesses."   *Conteh v. United States*, 226 F. Supp. 2d 514, 519 (S.D.N.Y. 2002).   Not all inaccurate testimony amounts to perjury.   "A

---

[9] Petitioner could have raised in her Rule 33 motion Marte's alleged perjury about the Aruba payment and about how much of the robbery proceeds he gave her, as she raised those allegations in the context of criticizing her trial counsel's performance.   (ECF No. 152 at 8; ECF No. 152-1 ¶ 15.)   She provides no reason why she did not raise this alleged perjury directly in her Rule 33 motion or on appeal, so those claims are procedurally defaulted, but I will address them in an excess of caution.

witness commits perjury if he gives false testimony concerning a material matter with the willful

intent to provide false testimony, as distinguished from incorrect testimony resulting from

confusion, mistake, or faulty memory."   *United States v. Monteleone*, 257 F.3d 210, 219 (2d Cir.

2001).   Moreover,

> a showing of perjury at trial does not in itself establish a violation of due process
> warranting habeas relief. . . . . Where there is no showing that the government knew
> about the alleged perjury, a new trial is warranted only if (1) the testimony was material,
> and (2) the court is left with a firm belief that but for the perjured testimony, the
> defendant would most likely not have been convicted.

*Sweat v. United States*, No. 05-CV-221, 2005 WL 3179672, at *5 n.9 (N.D.N.Y. Nov. 29, 2005).

> [W]here the newly discovered perjury concerns solely the witness' credibility, and the
> perjury is merely additional information tending further to impeach the credibility of a
> witness whose character has already been shown to be questionable, then it is unlikely
> that the jury would have acquitted on this basis, especially if there is ample independent
> evidence supporting the guilty verdict.

*United States v. Biaggi*, 823 F. Supp. 1151, 1156–57 (S.D.N.Y. 1993), *aff'd*, 48 F.3d 1213 (2d

Cir. 1994).   Where the allegation is that the prosecution knowingly used false testimony,

> a habeas petitioner has to prove that: (1) false testimony was introduced; (2) the
> prosecutor knew or should have known that the testimony was false; (3) the false
> testimony went uncorrected; and (4) there was a reasonable likelihood that the false
> testimony could have affected the judgment of the jury.

*Calderon v. Keane*, 115 F. App'x 455, 457 (2d Cir. 2004).

Additionally, "a defendant seeking relief on the ground of the government's use of

perjured testimony must demonstrate that he was unaware, and with due diligence would have

remained unaware, of the falsity of the testimony."   *Conteh*, 226 F. Supp. 2d at 520; *see United*

*States v. Zichettello*, 208 F.3d 72, 102 (2d Cir. 2000) (reversal based upon the use of perjured

testimony is "not justified unless the appellant establishes four matters:   (i) the witness actually

committed perjury; (ii) the alleged perjury was material; (iii) the government knew or should

10

have known of the alleged perjury at the time of trial; and (iv) the perjured testimony remained

undisclosed during trial"); *Abuziyad v. Goyea*, No. 17-CV-552, 2019 WL 8884051, at *17

(E.D.N.Y. Sept. 20, 2019) ("[P]etitioner must show that the facts demonstrating the perjury

could not have been discovered before or during trial with due diligence."), *report and

recommendation adopted*, 2020 WL 2617887 (E.D.N.Y. May 25, 2020)..

1.      Testimony about Teller Drawers (Issues 2a/5b)

Petitioner argues that Marte testified falsely in stating that Petitioner – a bank employee

who served as the insider in the bank robbery conspiracy – told him to forego the teller drawers

and instead go for the larger sums in the vault, and that the Government knew it.   She bases this

claim on handwritten notations in Marte's 18 U.S.C. § 3500 material from proffer sessions with

the Government that she contends show that skipping the drawers was his idea.   The notes state,

"I thought best not to take from drawers," (3502-U at 3), and "[t]ook too much time to take

drawers, ATM, vault," (3502-W at 1).   As an initial matter, the 3500 material was disclosed

before trial and Petitioner and her counsel were therefore not unaware of it, disqualifying her for

relief.   *See Zichettello*, 208 F.3d at 102; *Abuziyad*, 2019 WL 8884051, at *17; *Conteh*, 226 F.

Supp. 2d at 520.

In any event, the 3500 material does not show false testimony.   In context it is clear that

Marte reached those conclusions based on his conversations with Petitioner.   The notes reflect

that he said that Petitioner told him that there was money in the cashier drawers and the ATM,

and that there was "at least 500K in vault," (3502-U at 3); "I thought best not to take from

drawers/thought 1M to 500K in vault," (*id*.); "[t]ook too much time to take drawers, ATM,

vault➡talked about all three in first convo," (3502-W at 1).   There is no inconsistency between

testimony that Petitioner advised Marte to focus on the vault, which held the most money, and

Marte agreeing that the robbers' limited time in the bank was best spent on the vault.   As the

Circuit found in denying Petitioner's claim on direct appeal that her counsel's cross-examination

of Marte was ineffective, the "claimed inconsistencies in those witnesses' testimony . . . does not

obviously contradict their statements."   (ECF No. 183 at 6.)

Accordingly, Petitioner "has provided no evidence to support the assertion that [Marte's]

testimony was false."   *Fabers v. Lamanna*, No. 18-CV-2399, 2020 WL 1875288, at *18

(E.D.N.Y. Apr. 15, 2020), *appeal dismissed by* 2020 WL 6587523 (2d Cir. July 8, 2020).

"Given that Petitioner has failed to show that any false testimony was introduced, [s]he is also

unable to show that prosecutor knew or should have known the evidence was false and then

failed to correct it."   *Id.*; *see Warren v. Ercole*, No. 07-CV-3175, 2007 WL 4224642, at *10

(E.D.N.Y. Nov. 27, 2007) (Testimony that is "internally inconsistent does not necessarily

establish perjury, nor does it prove that the prosecutor knowingly presented perjured

testimony.").   "Furthermore, even assuming that Petitioner could show that the evidence was

false and that the prosecutor failed to correct it, h[er] claim nonetheless fails because [s]he is

unable to show that there is a reasonable likelihood that the false testimony could have affected

the judgment of the jury," *Fabers*, 2020 WL 1875288, at *19, in light of the ample other

evidence of inside information Marte obtained from Petitioner.[10]

---

[10]  This evidence is summarized in the Government's brief.   (ECF No. 206 at 3-7.)

2.     Testimony about Payment for Aruba Trip (Issues 2b/5b)

Marte testified that he and Petitioner took a trip to Aruba a few weeks after the robbery;

that he paid for it using cash from the robbery; that they went to clubs, bars and restaurants while

there; that they bought clothes, accessories, souvenirs and gifts; that they did water sports

including jet skiing and scuba diving; and that the cost of the trip was $5,000 to $9000.   (Tr. at

194:15-195:24.)   Petitioner supplied her lawyer with an email confirmation showing that she

booked the hotel and airfare online for approximately $3200.   (ECF No. 200-1 at 10-11.)

There is nothing necessarily inconsistent about these facts:   Marte easily could have given

Petitioner cash to reimburse her for the online booking, and the total cost easily could have

surpassed $5000, even if they were staying at an all-inclusive resort.   More fundamentally, "this

minor discrepancy fails to substantiate that [Marte] committed perjury."   *Spencer v. Ellsworth*,

No. 09-CV-3773, 2011 WL 1775963, at *5 (S.D.N.Y. May 10, 2011).   Moreover, "there is no

evidence that the prosecutor knew [Marte's] minor inconsistencies to be perjurious, rather than

the product of faulty recollection or inadvertence."   *Jackson v. Artus*, No. 07-CV-1114, 2008

WL 4386826, at *21 (S.D.N.Y. Sept. 22, 2008).   Further, as there was no dispute that Petitioner

and Marte had taken a nice vacation together shortly after the robbery and that Petitioner had lied

to the FBI about it, "there is no basis to conclude that [the minor inconsistencies] affected the

outcome of Petitioner's trial."   *Id.*

3.     Testimony about Criminal History (Issues 2c/4/5b)

Petitioner contends that Marte testified falsely that he had only been arrested once, in

2014 or 2015 for assault, when handwritten proffer notes in his 3500 material showed he had

told the prosecution about a sealed drug arrest from 2009 that resulted in either a misdemeanor or

13

an adjournment in contemplation of dismissal and about an arrest in 2008 for possessing brass

knuckles for which he served no time but might have paid a fine.   (3502-R at 2.)   This

information was in the 3500 material and thus Petitioner cannot show she was not aware of it.

Moreover, Marte testified at length at trial about his drug dealing, drug smuggling, shootings,

robberies, gun possession and assaults.   Petitioner has not shown that his omission of two minor

arrests was anything more than an oversight (on his part and the prosecutor's).   *See United*

*States v. Monteleone*, 257 F.3d 210, 219 (2d Cir. 2001) ("Simple inaccuracies or inconsistencies

in testimony do not rise to the level of perjury.").   Moreover, in light of the extent and

seriousness of Marte's prior bad acts in the trial record, it is inconceivable that the two minor

arrests from years before could have had any effect on the jury's assessment.   *See United States*

*v. Seabrook*, No. 10-CR-87, 2013 WL 4754331, at *6 (S.D.N.Y. Aug. 26, 2013) (no reasonable

likelihood alleged perjury by cooperators denying independent frauds would have affected

verdict, given jury's awareness of their moral turpitude and the abundant evidence), *aff'd*, 613 F.

App'x 20 (2d Cir. 2015); *United States v. Sessa*, No. 92-CR-351, 2011 WL 256330, at *44

(E.D.N.Y. Jan. 25, 2011) (collecting cases for proposition that where alleged perjury is

immaterial to elements of charged crimes, does not undermine abundant other evidence or is

cumulative impeachment, no reasonable likelihood perjury would have affected verdict), *aff'd*,

711 F.3d 316 (2d Cir. 2013).   Given the ample evidence of Marte's motives and bad acts already

before the jury, there is no reasonable likelihood that the alleged perjury could have affected the

outcome here.   *See Rosemond v. United States*, 378 F. Supp. 3d 169, 181 (E.D.N.Y. 2019) (no

reasonable likelihood undisclosed impeachment material could have affected verdict where

witness's motives and bad acts before jury).

14

4.      Conflict between Testimony and Proffers (Issue 2d)

Petitioner contends that Marte's proffers and testimony were at odds with one another,

but she provides no detail apart from the other instances addressed herein.

5.      Marte's and Martinez' Statements Regarding Guns (Issue 7a)

Petitioner claims that her convictions should be vacated because Marte differed from

Martinez on how the guns were obtained.   The summary of Marte's proffer reflects that Marte

said that Martinez owned one gun and borrowed another.   (3502-N at 3.)   A report of the

proffer of Martinez – who committed the robbery with Marte – said that Martinez stated he got a

9 mm automatic from his cousin, which the cousin kept at a friend's house, and that he called

another friend to get a revolver.   (3503-V at 2.)   He also stated that he returned the guns after

the robbery.   (*Id.* at 4.)   At trial Marte simply testified that Martinez brought the guns on the

day of the robbery.   (Tr. at 178:2-7.)   Martinez testified at trial that he did not own any guns at

the time, but at Marte's direction he obtained one gun from a friend and the other gun – his

cousin's – from the cousin's friend's house.   (*Id*. at 341:20-342:10, 346:1-11.)   The only

inconsistency these facts reveal is that Marte thought Martinez owned one gun and borrowed the

other, whereas Martinez said he borrowed both.   Not only was this information available to

Petitioner at trial, but it is a minor, inconsequential inconsistency.   It had nothing to do with

Petitioner, and would have made no difference to the jury, as the point was that both witnesses

acknowledged using two guns.   "Minor inconsistencies within and among prosecution witnesses

is no indication of intentional falsehood."   *Ciaprazi v. Senkowski*, No. 00-CV-5425, 2003 WL

23199520, at *10 (E.D.N.Y. Dec. 5, 2003), *aff'd*, 151 F. App'x 62 (2d Cir. 2005); *cf. Silva v.

Miller*, No. 04-CV-8013, 2009 WL 4060946, at *22 (S.D.N.Y. Nov. 24, 2009) ("Petitioner's

15

claims that his trial counsel was ineffective because she failed to elicit minor discrepancies between witnesses' grand jury and trial testimony provide no basis for habeas relief.").

>    6.      Pickup at Head Start (Issue 7c)

Equally unavailing is Petitioner's claim that Marte lied when he said testified that he sometimes took Petitioner's son to or from Head Start.   (Tr. at 145:18-19.)   Her evidence – five weeks' worth of records that show Petitioner and two others checking her son in or out, (ECF No. 200-1 at 17) – hardly undercuts that testimony.   It was corroborated by Marte's knowledge of the location of the school, (Tr. at 145:20-23), as well as the abundant other evidence that Marte and Petitioner were in a relationship.[11]   Moreover, whether or not Marte took Petitioner's son to school had nothing to do with the charges.   It was simply a "tangential matter which was not material either to the government's case or to the defense."   *Lauria v. United States*, No. 01-CV-1893, 2006 WL 3704282, at *9 (D. Conn. Dec. 13, 2006), *amended on reconsideration in part*, 2007 WL 1064319 (D. Conn. Apr. 5, 2007), *aff'd in part sub nom. Pappas v. United States*, 362 F. App'x 175 (2d Cir. 2010).

>    7.      Where/When Money Counted (Issue 7d)

Petitioner notes that the summary of Marte's proffer states that after the robbery, he put the car, with the money, in a garage, and a few hours later retrieved the money and counted it at his sister's apartment.   (3502-N at 5.)   At trial he testified that he put the car in a parking lot and then went to his sister's apartment to drop off the money, which he counted later.   (Tr. at

---

[11] This evidence – summarized in the Government's brief, (ECF No. 206 at 5-6) – included photo booth photos of Marte, his son, Petitioner and her son laughing together, (GX 31), and of Marte and Petitioner kissing, (GX 32), and the records of their travel to Aruba together, (GX 60A-B, 61, 62, 63).

186:22-188:10.)   Not surprisingly, she does not explain any significance of this minor

inconsistency.   There is no reasonable likelihood that it could have affected the outcome of the

case, as it had nothing to do with Petitioner and it was undisputed that Marte had committed the

robbery and thereafter counted the money.

###### 8.      How Much Marte Gave Petitioner (Issue 7e)

At trial Marte testified that out of the robbery proceeds he gave Petitioner approximately

$7000 for a new car after hers was damaged by a Con Edison truck, another $10,000, and the trip

to Aruba.   (Tr. at 193:16-24.)   The report of his proffers stated that he gave her $10,000 to buy

a Jeep about a month after the robbery.   (3502-N at 5.)   This is, yet again, a minor

inconsistency that does not amount to perjury, nor anything that reasonably could have affected

the verdict.   As I stated in denying her Rule 33 motion, "whether it was 10,000 or 17,000, either

way, it shows Marte giving the defendant a large amount of cash shortly after the robbery."

(ECF No. 164 at 33:17-19.)[12]

In short, the handful of minor discrepancies to which Petitioner points does not even

show perjury, let alone perjury that most likely would have led to acquittal or perjury known to

---

[12]  Petitioner also points out that the $7549.37 bill of sale for the Jeep was dated January
31, 2014.   (ECF No. 200-1 at 1.)   (The Government marked as an exhibit and provided to the
Court and counsel, but did not offer into evidence, the insurance cards for the Jeep, which bear
the same date. (Government Exhibit 55.))   She contends, without explaining why, that it is
improbable that she would have bought the Jeep three months after the October 29, 2013
robbery.   There are any number of reasons she might have delayed in buying the Jeep.   One
may have been that she received a check dated January 29, 2014 for $4131.76 from Con Edison.
(ECF No. 200-1 at 4.)   Or Marte could have been mistaken in estimating, during the proffer, that
he gave her the money a month after the robbery – a time frame not presented to the jury in any
event.

the Government that would have had any reasonable likelihood of affecting the verdict. *See, e.g.*, *Garcia v. Graham*, No. 09-CV-6593, 2015 WL 8675300, at \*6 (S.D.N.Y. Dec. 10, 2015) (minor discrepancies between testimony of witnesses "do not establish that one of them committed perjury"); *Hill v. Bradt*, No. 03-CV-00267, 2015 WL 5692818, at \*6 (W.D.N.Y. Sept. 28, 2015) (habeas relief unwarranted where "petitioner's contentions take issue with minor inconsistencies between initial police reports paraphrasing [a witness's] statements and [the witness's] ultimate trial testimony"); *Gortat v. Capala Bros.*, No. 07-CV-3629, 2010 WL 1423018, at \*5 (E.D.N.Y. Apr. 9, 2010) (rejecting claim of perjury where inconsistencies were "inconsequential or even non-existent"), *aff'd*, 568 F. App'x 78 (2d Cir. 2014); *Jackson*, 2008 WL 4386826, at \*20 (minor inconsistencies are "standard fare for impeachment" but not evidence of perjury); *Alvear-Ruiz v. United States*, No. 04-CV-0234, 2007 WL 3124764, at \*11 (E.D.N.Y. Oct. 24, 2007) ("testimonial discrepancies were small and inconsequential to the outcome of the case").[13]

---

[13] To the extent Petitioner, in her August 19, 2022 letter, (*see* ECF No. 213), was attempting to amend her petition to raise a claim under *United States v. Taylor*, 142 S. Ct. 2015 (2022), any such amendment would be futile.   *Taylor* held that attempted Hobbs Act robbery was not a crime of violence that could support a conviction under 18 U.S.C. § 924(c) – and since then the Second Circuit has held that substantive Hobbs Act robbery is not a crime of violence for purposes of the career offender provision of the Sentencing Guidelines, because it can be committed by the threat of violence against property.   *See United States v. Chappelle*, 41 F.4th 102, 109 (2d Cir. 2022).   Neither has any effect on bank robbery by force, violence or intimidation, which was the charge here and which the Second Circuit found – in Petitioner's own case, among others, *see United States v. Blanco*, 811 F. App'x 696, 701 (2d Cir. 2020) – is categorically a crime of violence, *see United States v. Hendricks*, 921 F.3d 320, 327-28 (2d Cir. 2019); *United States v. Moore*, 916 F.3d 231, 237 (2d Cir. 2019).

Finally, Petitioner's renewed request for appointment of counsel, (ECF Nos. 212-13), is denied.   Petitioner's claims do not appear to be of substance; she has done a more than adequate job in representing herself; she has been able to gather the crucial facts; and her claims raise no

CONCLUSION

For the reasons stated above, the Petition is denied.   As the Petition makes no substantial

showing of a denial of a constitutional right, a certificate of appealability will not issue.   *See* 28

U.S.C. § 2253; *Matthews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012).

The Clerk of Court is respectfully directed to: 1) docket this Order in both of the above-

captioned cases; 2) terminate ECF Nos. 194 and 200 in No. 16-CR-408; 3) close No. 18-CV-

8126; and 4) send a copy of this Order to Virginia Blanco, No. 79564-054, FDC Philadelphia,

Federal Detention Center, P.O. Box 562, Philadelphia, PA  19105.

SO ORDERED.

Dated:  August 25, 2023
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

---

evidentiary disputes requiring a hearing.  *See United States v. Minaya*, No. 11-CR-755, 2022
WL 594150, at *2 (S.D.N.Y. Feb. 28, 2022); *Nappy v. United States*, No. 13-CV-5888, 2013 WL
6405171, at *1 (S.D.N.Y. Dec. 5, 2013).